Faye ZHENGXING, Plaintiff,

v.

Marc B. NATHANSON, Chairman, U.S. Broadcasting Board of Governors, Defendant.

Nos. CIV.A. 02–0301(RMU), 1, 10, 13, 15, 18.

United States District Court, District of Columbia.

Aug. 5, 2002.

Faye Zhengxing, Washington, DC, Pro se.

Edith M. Shine, Assistant United States Attorney, Washington, DC, for Defendants.

### MEMORANDUM OPINION

#### GRANTING THE DEFENDANT'S MOTION TO DISMISS

URBINA, District Judge.

## I. INTRODUCTION

This matter comes before the court on the defendant's motion to dismiss for lack of subject-matter jurisdiction. Faye Zhengxing ("the plaintiff" or "Ms. Zhengxing") brings this action *pro se* for employment discrimination and wrongful termination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* The defendant is Marc B. Nathanson ("the defendant"), Chairman of the U.S. Broadcasting Board of Governors, named in his official capacity. The plaintiff alleges that she suffered sexual harassment during her employment at the Voice of America, which is part of the International Broadcasting Bureau of the U.S. Broadcasting Board of Governors. She seeks monetary damages, including back pay, compensation for emotional distress, and attorney's fees. The defendant argues that the plaintiff was not an employee and thus was not covered by Title VII. The defendant further contends that the plaintiff failed to exhaust her administrative remedies before initiating this action. The court concludes that since the plaintiff was not an employee, she was not entitled to

Title VII protection. Accordingly, the court grants the defendant's motion to dismiss and denies all other pending motions as moot.

## II. BACKGROUND

In July 2000, the defendant hired Ms. Zhengxing as a Purchase Order Vendor ("POV") with the Mandarin Service, a subdivision of the Chinese Branch of the Voice of America. Compl. at 2; Mot. to Dismiss at 2. This position involved "broadcast related duties" such as announcing, translating news and features, and producing. Mot. to Dismiss at 2, Ex. 2 ("Baum Decl.") ¶ 3. The Mandarin Service also utilizes POVs as information or research assistants to conduct background research for stories, edit English language summaries of the original programs, and perform translations from Mandarin to English. *Id.* ¶ 3. The defendant initially paid Ms. Zhengxing $60 for each completed order or assignment and increased her rate to $65 per order in 2001. *Id.* ¶ 3.

Ms. Zhengxing claims she experienced sexual harassment soon after she began working at the Voice of America. Pl.'s Mot. in Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") at 4. She asserts that William Baum, Chief of the Chinese Branch, would meet her in the hallway when she arrived at work and "made eyes" at her on several occasions. Compl. at 3. Ms. Zhengxing alleges that because she refused Mr. Baum's advances, he began to retaliate against her by giving her fewer orders and scrutinizing her work. *Id.* at 6. She asserts that she auditioned for three TV host positions in February 2001 but was rejected in all three cases. *Id.* at 7. Ms. Zhengxing alleges that the defendant originally promised her a TV host position and that she considered her employment as a POV to be a temporary assignment. *Id.* at 2–3. On March 9, 2001, Ms. Zhengxing

claims that her assignments changed from editing and translating to downloading the audience's e-mail addresses. *Id.*

She filed an informal complaint with the Equal Employment Opportunity Commission ("EEOC") on April 13, 2001 and a formal administrative complaint on May 18, 2001. Compl. at 10. The defendant fired Ms. Zhengxing on August 16, 2001. *Id.* at 13. Ms. Zhengxing claims that "[i]n the letter of termination, there is nothing related to my job performance, or any violation of rules or regulations." *Id.* She filed her complaint in federal court on February 19, 2002.

On May 24, 2002, the defendant filed a motion to dismiss for lack of subject-matter jurisdiction. The defendant argues that the plaintiff was an independent contractor rather than an employee and therefore cannot bring a claim under Title VII. Mot. to Dismiss at 1. The defendant maintains that the POV position "was not integral or essential to the work of the Voice of America" and that POVs possess specialized knowledge and require minimal supervision. *Id.* at 15–16. In addition, Mr. Baum insists that he did not directly supervise the POVs and instead reviewed the plaintiff's finished work product. *Id.* Ex. 2 ("Baum Decl.") at ¶ 9. The defendant also states that it pays POVs by the assignment, that POVs are not eligible for coverage under Federal retirement programs, and that the defendant requires POVs to pay their own Social Security taxes. *Id.* at 18. The defendant argues that "although Defendant would have provided Plaintiff with a place to work, there is no evidence that the Defendant would really have controlled the manner and means by which Plaintiff performed her work." *Id.* at 17. The court now turns to the defendant's motion to dismiss.

## III. ANALYSIS

### A. Legal Standards

#### 1. Legal Standard for Motion to Dismiss

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction. *District of Columbia Retirement Bd. v. United States*, 657 F.Supp. 428, 431 (D.D.C.1987). In evaluating whether subject-matter jurisdiction exists, the court must accept all the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The court need not, however, accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations. *E.g., Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990). Moreover, the court need not limit itself to the allegations of the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C.Cir. 1986), *vacated on other grounds*, 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). Rather, the court may consider such materials outside the pleadings as it deems appropriate to determine whether it has jurisdiction in the case. *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C.Cir.1992).

#### 2. Title VII's "Employee" Requirement

Under Title VII, "[a]ll personnel actions affecting employees or applicants for employment ... shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–16(a). Title VII extends protection to federal government employees, but "independent contractors or those

not directly employed ... are unprotected." *Spirides v. Reinhardt,* 613 F.2d 826, 829 (D.C.Cir.1979). Title VII defines an "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f). When the statute containing the term "employee" does not helpfully define it, the Supreme Court has instructed that "Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 322–23, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (citations omitted); *Spirides,* 613 F.2d at 831; *Cilecek v. Inova Health Sys. Servs.,* 115 F.3d 256, 259 (4th Cir.1997).

■■■ To determine whether an individual is an employee or an independent contractor, the court must conduct an "analysis of the 'economic realities' of the work relationship." *Spirides,* 613 F.2d at 831 (quotation omitted). The most important factor to consider is "the extent of the employer's right to control the 'means and manner' of the worker's performance." *Id.* (quotation omitted); *see also Redd v. Summers,* 232 F.3d 933, 938 (D.C.Cir. 2000); *Holt v. Winpisinger,* 811 F.2d 1532, 1539 (D.C.Cir.1987). The court must also weigh the following additional factors:

(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" ... furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of

the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Spirides,* 613 F.2d at 832.

## B. The Plaintiff Was an Independent Contractor

■■ The defendant argues that the plaintiff is not entitled to Title VII protection because she did not fit the definition of "employee." Mot. to Dismiss at 1. The court applies the D.C. Circuit's 12–factor test to determine whether Ms. Zhengxing qualified as an employee or an independent contractor. *Spirides,* 613 F.2d at 831–32.

The most important criterion for assessing employee status is "the extent of the employer's right to control the 'means and manner' of the worker's performance." *Id.* at 831. Mr. Baum contends that he did not directly supervise the POVs and that his contact with them consisted of correcting their completed originations and e-mailing them if he noticed any mistakes. Mot. to Dismiss Ex. 2 ¶ 9; *see also Redd,* 232 F.3d at 938 (explaining that the defendant did not control the "means and manner" of the plaintiff's performance because the defendant merely inspected the quality of the completed work and was not involved in the actual performance that produced the finished product); *Cobb v. Sun Papers, Inc.,* 673 F.2d 337, 341 (11th Cir. 1982) (holding that the plaintiff was an independent contractor because he was not told how to perform the job and that "the criterion used by the Defendant in connection with this relationship was the quality of the work actually performed").

The plaintiff admits that her superior was not involved in the actual performance that produced the final product. *Redd,* 232 F.3d at 938. Indeed, she states that,

"when I was working on originations, it seemed to be based on end product." Compl. Ex. 26 ("EEOC Appeal") at 5. Ms. Zhengxing offers little evidence to support her claim that she worked under "well-organized supervision," merely asserting that "the supervisor controls my pay and raise" and that Senior Editor Jing Zhang "once told me that I should put more details in the highlight." *Id.* at 2, 5. But Ms. Zhengxing does not claim that her actual performance was monitored in any manner. *Cf. Holt*, 811 F.2d at 1539 (holding that the defendant had sufficient control over the plaintiff's performance because he trained her, supervised her work, "set out her daily routine," and "told her what tasks needed to be done"). Mr. Zhang insists that his involvement in Ms. Zhengxing's work consisted of discussing errors and "language problems" with her, but this occurred after Mr. Baum first reviewed her completed work. Mot. to Dismiss Ex. 1 ("Zhang Decl.") at ¶ 9. Given the lack of evidence of direct employer supervision, the court determines that the defendant did not control the "means and manner" of the plaintiff's performance. *Spirides*, 613 F.2d at 831.

The court also concludes that the vast majority of the 11 additional factors clearly designate the plaintiff as an independent contractor rather than an employee. *Id.* at 832. First, the court finds that the plaintiff's job required a specialist who worked under minimal supervision. *Id.* As for "the skill required in the particular occupation," the defendant contends that the POV position requires "specialized knowledge" and that "the Defendant expected to rely on the individual's Mandarin and English language skills and research abilities rather than to direct her work tasks." *Id.;* Mot. to Dismiss at 15–16. The plaintiff claims that the hiring criteria for her position included "bilingual skills . . . as well as other research, communication and web skills." Compl. Ex. 26 at 2.

The court, however, concludes that the plaintiff was required to possess this "specialized knowledge" before commencing her position as a POV. *Spirides*, 613 F.2d at 832; *cf. Holt*, 811 F.2d at 1539 (holding that the plaintiff was an employee because the defendant "trained her to use office equipment, and taught her to perform many clerical tasks such as bookkeeping, typing up leases and updating the building directory").

The defendant concedes the third additional factor, regarding "whether the 'employer' . . . furnishes the equipment used and the place of work." *Spirides*, 613 F.2d at 832. The defendant admits that the Mandarin Service "provided the Plaintiff with a place to work," and the plaintiff asserts that "IBB provides us with computer, telephone, and other equipment tools." Mot. to Dismiss at 17; Compl. Ex. 26 at 3. But this is the only factor that favors the plaintiff.

Next, Ms. Zhengxing asserts that she was employed by the defendant from July 2000 to August 2001. Compl. at 1. The court concludes that this factor is not indicative of the plaintiff's status and neither party advances any argument regarding this element of the test. In terms of the method of payment, the defendant maintains that the plaintiff was paid "by the job" as opposed to "by time." Mot. to Dismiss at 18; *Spirides*, 613 F.2d at 832. The plaintiff concedes this factor by stating that "I could be paid up to three orders ($180) a day." Compl. at 2; *see also Cilecek*, 115 F.3d at 261 (explaining that the plaintiff "was paid only for work actually performed and not a uniform salary," thereby confirming his status as an independent contractor). In addition, the plaintiff submits her income tax form as evidence of employment. Compl. Ex. 7. But this strengthens the defendant's argument because the plaintiff received a Form

1099, which employers give to independent contractors. *Id.* In contrast, employees receive a Form W2, which further supports the defendant's contention that Ms. Zhengxing's position was contractual.

As for "the manner in which the work relationship is terminated," the defendant contends that POVs are subject to various provisions of the Federal Acquisitions Regulations, including a provision that "[t]he Government reserves the right to terminate the contract . . . for its sole convenience." *Spirides,* 613 F.2d at 832; Mot. to Dismiss at 17, Ex. 2 at Att. 1 ("Supplemental Terms & Conditions") at ¶ f. The plaintiff claims that when the defendant fired her, she received a letter of termination that said "nothing related to my job performance, or any violation of rules or regulations." Compl. at 13. The plaintiff's termination "without notice and/or explanation" further underscores her status as an independent contractor. *Spirides,* 613 F.2d at 832.

The defendant also avers that the plaintiff "did not accrue annual leave," "would not have been eligible for coverage under Federal retirement programs," and "was required to pay her own social security taxes." Mot. to Dismiss at 18. The plaintiff confirms these factors as well, stating that "[t]he Agency does not provide me with any benefits," and "[t]he Agency does not withhold Social Security or other taxes from my compensation." Compl. Ex. 26 at 3; *see also Farlow v. Wachovia Bank of N. Carolina, N.A.,* 259 F.3d 309, 316 (4th Cir.2001) (emphasizing "the financial relationship between the parties" to determine the plaintiff's independent contractor status, including the lack of benefits, payment for services actually rendered rather than a set salary, and the fact that the defendant did not withhold or pay any taxes). Accordingly, all three of these factors support the defendant's argument that Ms. Zhengxing was not an employee.

Regarding the intent of the parties, the defendant argues that the "[p]laintiff's decision to give up a position with benefits for a position without benefits" indicates that she understood the contractual nature of the position. Mot. to Dismiss at 15. The plaintiff actually supports the defendant's argument, stating that "[t]his hiring ad from Chinese Branch clearly states: . . . 'VOA's Mandarin Service is hiring contract employees." Compl. Ex. 26 at 3. This advertisement demonstrates the defendant's intent to hire Ms. Zhengxing as an independent contractor.

Lastly, the court lacks sufficient evidence to conclude "whether the work is an integral part of the business of the 'employer.'" *Spirides,* 613 F.2d at 832. The plaintiff merely claims that her work was an integral part of the defendant's mission but points to no evidence to support this statement. Compl. Ex. 26 at 3. The defendant counters by arguing that "the POV position is only a part of the work of the Mandarin Service. While supportive, the job was not integral or essential to the work of the Voice of America." Mot. to Dismiss at 16. The court need not decide this factor, however, since the factors overwhelmingly favor the defendant's contention that Ms. Zhengxing was an independent contractor. *Spirides,* 613 F.2d at 832. While the court did not determine two of the 12 factors, only one supports the plaintiff's position, while nine, including the most important one (the extent of the employer's right to control the means and manner of the worker's performance), reinforce the defendant's position. *Id.*

One final point merits attention. Ms. Zhengxing claims that regardless of her status, "the sexual harassment policy of the Defendant, ironically, includes contractors into its coverage." Pl.'s Opp'n at 8. The plaintiff cites the defendant's policy, which states that "[a]ny BBG employee

found to have engaged in sexual harassment in violation of the policy is subject to disciplinary action. The offending individual, however, may not necessarily be an employee, but may be a contractor or other nonemployee." *Id.* Ex. 7. The plaintiff misunderstands the defendant's policy, however, since the policy allows the "offending individual" to be a contractor but says nothing about the alleged victims of sexual harassment. *Id.*

In sum, the court concludes that the plaintiff was an independent contractor rather than an employee and thus was not entitled to the protection of Title VII. *Spirides*, 613 F.2d at 829. Accordingly, the court grants the defendant's motion to dismiss for lack of subject-matter jurisdiction and denies all other pending motions as moot.[1]

## IV.  CONCLUSION

For all these reasons, the court grants the defendant's motion to dismiss and denies all other pending motions as moot. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 5 day of August, 2002.

### *ORDER*

#### GRANTING THE DEFENDANT'S MOTION TO DISMISS

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this 5 day of August, 2002, it is

**ORDERED** that the defendants' motion to dismiss is **GRANTED**; and it is

---

1. The court acknowledges the plaintiff's recently-submitted Memorandum of Points and Authorities in Opposition to Defendant's Memorandum/Motion to Dismiss. The court

**FURTHER ORDERED** that all other pending motions are **DENIED as moot**.

**SO ORDERED.**

determines, however, that the plaintiff advances no new arguments regarding her alleged employee status.